**IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **SOPHIA BEASLEY, JOHN FOSTER, TOMMETTA FOSTER, BYRANT GARDNER,FELIX SNELL, KELVIN STOVALL, DENEZIA STRINGER, and JARVIS WILSON,** | ) ) ) ) ) | |
| | ) | |
| **Plaintiffs** | ) | **Civil Action No.:** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **HEART OF ALABAMA FOOD BANK,** | ) ) | **Jury Trial Requested** |
| | ) | |
| **Defendant.** | ) | |

## COMPLAINT

## I.    NATURE OF COMPLAINT

This action is brought by Sophia Beasley, John Foster, Tommetta Foster, Bryant Gardner, Felix Snell, Kelvin Stovall, Denezia Stringer, and Jarvis Wilson to address Heart of Alabama Food Bank's demonstrable policy and practice of race discrimination in the terms and conditions of employment. These individuals, all African-American, allege that Heart of Alabama Food Bank (hereinafter referred to as the "Defendant", "Heart of Alabama Food Bank," or "HOA") allowed racial animus and racial discrimination to guide its decisions regarding their terms and conditions of employment.

## II.    **JURISDICTION AND VENUE**

1.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343(3), and (4), 2201 and 2202.  This is a suit authorized and instituted pursuant to the Act of Congress known as "The Civil Rights Act of 1866," 42 U.S.C. § 1981.

2.      Venue is proper in the Middle District of Alabama under 28 U.S.C. § 1391(b) & (c) because HOA is located here, the persons responsible for overseeing the human resources function are here, HOA maintains personnel records here, and engaged in or ratified illegal conduct that adversely affected the Plaintiffs here.  The Defendant's failure to promulgate effective equal employment policies originated in this district. The records relevant to whether this Defendant has issued such policies or ratified such conduct are located in the Middle District of Alabama.

## III.    **CONDITIONS PRECEDENT TO SUIT**

3.      Plaintiffs are timely filing this action within the four-year statute of limitations applicable to racial discrimination claims brought pursuant to 42 U.S.C. § 1981.  *See,* 28 U.S.C. § 1658.

## IV.    **PARTIES**

### A.    **Defendant**

4.      Defendant Heart of Alabama Food Bank is an entity subject to suit under 42 U.S.C. §1981.

**B.    Plaintiffs**

5.    **Sophia Beasley** is an African-American resident of the State of Alabama and a citizen of the United States.  At all times material to this action, she was employed with HOA.

6.    **John Foster** is an African-American resident of the State of Alabama and a citizen of the United States.  At all times material to this action, he was employed with HOA.

7.    **Tommetta Foster** is an African-American resident of the State of Alabama and a citizen of the United States.  At all times material to this action, she was employed with HOA.

8.    **Bryant Gardner** is an African-American resident of the State of Alabama and a citizen of the United States.  At all times material to this action, he was employed with HOA.

9.    **Felix Snell** is an African-American resident of the State of Alabama and a citizen of the United States.  At all times material to this action, he was employed with HOA.

10.    **Kelvin Stovall** is an African-American resident of the State of Alabama and a citizen of the United States.  At all times material to this action, he was employed with HOA.

11.     **Denezia Stringer** is an African-American resident of the State of Alabama and a citizen of the United States.  At all times material to this action, she was employed with HOA.

12.     **Jarvis Wilson** is an African-American resident of the State of Alabama and a citizen of the United States.  At all times material to this action, he was employed with HOA.

## V.     STATEMENT OF FACTS

### A.     Allegations Depicting Direct Evidence of Racial Animus

13.     The Defendant, Heart of Alabama Food Bank, works with over 200 food pantries, soup kitchens, residential facilities, and children's programs across 12 counties in the River Region of Alabama.

14.     The Defendant supplies these clients with a variety of foods including meats, canned goods, fruits, vegetables, bread, and rice for little or no costs.

15.     In or around July 2022, the Defendant hired Michael Coleman, white male, to serve as its Chief Executive Officer.

16.     Upon his hire, Mr. Coleman remarked that he was "gonna change the face of the HOA."

17.     When Mr. Coleman assumed the CEO's position, the majority of HOA's employees were African-American, and a number of African-American

4

employees served in supervisory positions.

18.    Mr. Coleman then began to purge HOA of most of its African-American employees, and in most cases replaced them with whites with less experience and/or qualifications from inside or outside of the organization.

### B.    Plaintiffs' Allegations

19.    **Plaintiff Sophia Beasley** (hereinafter referred to as "Beasley") was discriminated against on the basis of her race with regards to termination.

20.    Ms. Beasley began working for the Defendant in or around October 2021 as an Agency Services Coordinator.

21.    She was terminated in or around November 2022 for allegedly participating in a scheme to funnel food to a vendor at a greatly reduced cost.

22.    Prior to this incident, Ms. Beasley had never been disciplined for any on the job rules infraction.

23.    The practice that allegedly formed the basis of her termination had been approved by the Director, David Fata, a white male.

24.    Upon information and belief, Mr. Fata faced no discipline and was not terminated.

25.    Upon information and belief, Ms. Beasley was replaced by a white male named Brian (LNU) who immediately prior had served the organization as a

Custodian.[1]

26.    **Plaintiff John Foster** (hereinafter referred to as "Foster ") was discriminated against on the basis of his race with regards to termination.

27.    Mr. Foster began working for the Defendant in or around June 2011 in the Warehouse sorting food for distribution.

28.    He was terminated in or around September 2022 for allegedly participating in a scheme to funnel food to a vendor at a greatly reduced cost.

29.    Prior to this incident, Mr. Foster had never been disciplined for any on the job rules infraction.

30.    The practice that allegedly formed the basis of his termination had been approved by the Director, David Fata, a white male.

31.    Upon information and belief, Mr. Fata faced no discipline and was not terminated.

32.    Prior to Mr. Foster's termination, Mr. Coleman made it mandatory that all HOA leaders and staffers tour The National Memorial for Peace and Justice, informally known as the National Lynching Memorial, (hereinafter referred to as the "Lynching Memorial"), which is located in downtown Montgomery, Alabama.

---

[1]LNU denotes "last name unknown".

33.    During the tour, Mr. Coleman allegedly stated that his grandfather and father had committed acts of racially motivated violence against African-Americans, while opposing the Civil Rights Movement in Montgomery, Alabama and the surrounding counties.

34.    **Plaintiff Tommetta Foster** (hereinafter referred to as "Ms. Foster") was discriminated against on the basis of her race with regards to termination.

35.    Ms. Foster began working for the Defendant in or around August 2023 as the Transportation Manager.

36.    The Transportation Manager's position required that one possess a Commercial Driver's License which Ms. Foster did.

37.    Ms. Foster is a single parent and took her daughter school every morning before she reported to work.  This was not a problem until Mr. Coleman became CEO of HOA.

38.    Upon assuming this role, Mr. Coleman informed Ms.  Foster that she could no longer take her daughter to school before reporting to work.

39.    Mr. Coleman never gave a reason for the abrupt policy change, and Ms. Foster had never been disciplined in any way for any workplace rules infractions.

40.    When Ms. Foster stated that her childcare needs were inflexible, HOA terminated her employment in or around February 2024.

41.    Prior to terminating Ms. Foster, HOA posted her position without the requirement for CDL.

42.    Ms. Foster was then replaced by Hollie Felder, a white female, Ms. Foster's Administrative Assistant who did not possess a CDL.

43.    Ms. Felder also possessed no experience with Department of Transportation Regulations or Codes.

44.    **Plaintiff Bryant Gardner** (hereinafter referred to as "Gardner") was discriminated against on the basis of his race with regards to his employment.

45.    Mr. Gardner was hired by HOA on or about March 15, 2021 as a Truck Driver.

46.    Mr. Gardner was promoted to Inventory Specialist within the first 90 days of his employment and then to Inventory Supervisor in January 2022 under the direct supervision of David Fata.

47.    Michael Coleman changed Mr. Gardner's job title to Inventory Manager upon being named HOA's CEO in July 2022.

48.    Almost immediately of becoming CEO, Mr. Coleman directed Mr. Gardner to train newly-hired Sarah O'Dell (hereinafter referred to as "O'Dell"), a white female, to assume the role of Inventory Manager.  Less than two months later, Mr. Coleman stripped Mr. Coleman of the Inventory Manager position and awarded

it to Ms. O'Dell.

49.    Mr. Coleman then moved Mr. Gardner to Logistics Manager.  At this time, Mr. Gardner was the only African-American of supervisory authority remaining under Mr. Coleman.

50.    During management meetings, Mr. Coleman often remarked that he had "gotten rid of all the other pieces and had one more left."

51.    Soon after becoming Logistics Manager, Mr. Gardner was required to train a white male.  This white male told Mr. Coleman on multiple occasions that Mr. Coleman was having him trained so he could replace Mr. Gardner.

52.    On or about September 2022, Mr. Gardner, like all other African-American employees, was required to visit the Lynching Museum via HOA-provided transportation.   Mr. Gardner did not care to attend the Lynching Museum; however, Mr. Colemand indicated that employees not going the Lynching Museum would not be paid for the day.

53.    Given Mr. Coleman's track record, threats, and innuendo, Mr. Gardner felt compelled to leave HOA in February 2023, as Mr. Coleman had fired or forced the resignation of numerous African American employees and essentially all supervisory level African-American employees of supervisory level.

54.    **Plaintiff Felix Snell** (hereinafter referred to as "Snell") was discriminated against on the basis of his race with regards to termination.

55.    Mr. Snell began working for the Defendant in or around March 2015 in the Warehouse sorting food for distribution.

56.    He was terminated in or around May 2023 for allegedly participating in a scheme to funnel food to a vendor at a greatly reduced cost.

57.    Prior to this incident, Mr. Snell had never been disciplined up for any on the job rules infraction.

58.    The practice that allegedly formed the basis of his termination had been approved by the Director, a white male, David Fata.

59.    Upon information and belief, Mr. Fata faced no discipline and was not terminated.

60.    Prior to Mr. Snell's termination, Mr. Coleman made it mandatory that all HOA leaders and staffers tour the National Lynching Memorial.

61.    During the tour, Mr. Coleman allegedly stated that his grandfather and father had committed acts of racially-motivated violence against African-Americans while opposing the Civil Rights movement in Montgomery, Alabama and surrounding counties.

62.    Mr. Snell raised an objection to attending the exhibit but did as he was told.

63.    **Plaintiff Kelvin Stovall** (hereinafter referred to as "Stovall") was discriminated against on the basis of his race with regards to his employment.

64.    Mr. Stovall began his employment on or about December 5, 2017 as Freezer Coordinator.

65.    He worked and "ran" the three freezers for six years without help.  He was never disciplined or reprimanded for failure to satisfactorily perform the functions of his job.

66.    On or about January 2024, the Freezer Supervisor position was posted, and Mr. Stovall applied for the position.

67.    He was not granted an interview; instead, Defendant awarded the position to six-month employee, Jason Felder, a less qualified white male.

68.    Felder failed in the Freezer Supervisor position.

69.    Mr. Stovall applied for said position a second time in or about April 2024 and was again rejected in favor of a less qualified white male.

70.    Seeing no opportunity for advancement due solely because of his race, Mr.  Stovall resigned his employment on or about June 25, 2024.

71.    **Plaintiff Denezia Stringer** (hereinafter referred to as "Stringer") was discriminated against on the basis of her race with regards to termination.

72.    Ms. Stringer began working for the Defendant in 2017 as a Staff Accountant.

73.    In August 2022, Ms. Stringer was terminated without warning.

74.    Prior to her termination, Ms. Stringer had never been disciplined for any workplace misconduct.

75.    Ms. Stringer was replaced by Joanne Johnson, a white female.

76.    **Plaintiff Jarvis Wilson** (hereinafter referred to as "Wilson") was discriminated against on the basis of his race with regards to termination.

77.    Mr. Wilson began working for the Defendant in or around January 2014 as Truck Driver, and he eventually worked his way up to Warehouse Manager.

78.    He was constructively discharged in or around September 2022 for allegedly participating in a scheme to funnel food to a vendor at a greatly reduced cost.

79.    Mr. Wilson was constructively discharged in that he was threatened with police action by HOA officials if he did not resign his position.

80.    Because of his negative past experiences with law enforcement and his inability to afford a lawyer, Mr. Wilson reluctantly resigned his employment.

81.     Prior to this incident, Mr. Wilson had never been disciplined up for any workplace rules infraction.

82.     The practice that allegedly formed the basis of his constructive discharge had been approved by the Director, a white male, David Fata.

83.     Upon information and belief, Mr. Fata faced no discipline and was not terminated.

84.     Prior to Mr. Wilson's termination, Mr. Coleman made it mandatory that all HOA leaders and staffers tour the Lynching Memorial.

85.     During the tour, Mr. Coleman allegedly stated that his grandfather and father had committed acts of racially motivated violence against African-Americans while opposing the Civil Rights movement in Montgomery, Alabama and surrounding counties.

## VI.    CLAIMS

### COUNT I

### RACIALLY DISPARATE TREATMENT
### IN VIOLATION OF 42 U.S.C. § 1981

86.     Plaintiffs re-allege and incorporate by reference the above paragraphs with the same force and affect as if fully set forth herein.

87.     The unlawful actions of Defendant, by and through its agents, alleged herein were substantially motivated by unlawful race discrimination.  Defendant, by

13

and through its agents, engaged in the race discrimination complained of herein with malice and reckless indifference to Plaintiffs' federally protected rights.

88.    As a result of Defendant's actions, Plaintiffs have suffered extreme harm including, but not limited to, loss compensation and other benefits and conditions of employment.   Additionally, Plaintiffs have suffered injury including pain, humiliation, mental anguish and suffering and loss of enjoyment of life.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiffs respectfully pray that this Court will assume jurisdiction of this action and, after trial, provide relief as follows:

1.    Issue a declaratory judgment that the employment practices, policies, procedures, conditions and customs that led to the discrimination engaged in by the Defendant are violative of the rights of the Plaintiffs as secured by 42 U.S.C. Sections 1981;

2.    Grant Plaintiffs a permanent injunction enjoining Defendant, its agents, successors, employees, attorneys and those acting in concert with Defendant and at Defendant's request from continuing to violate 42 U.S.C. Sections 1981;

3.    Enter an Order requiring Defendant to make Plaintiffs whole by awarding Plaintiffs back-pay (plus interest), front-pay, reinstatement into the position each respective Plaintiff would have held if Defendant had not

discriminated against them because of their race, compensation for loss of wages and benefits, lost seniority, and pension benefits and nominal, compensatory and punitive damages;

4.    Plaintiffs further pray for such other and further relief and benefits as the cause of justice may require, including, but not limited to, an award of costs, attorneys' fees, and expenses incurred by this ligation;

5.    Plaintiffs have no plain, adequate, or complete remedy at law to redress the wrongs alleged in this suit, and this action for injunctive, declaratory and other relief are their only means of securing adequate relief;

6.    Prejudgment interest; and

7.    Such other and further relief as the Court may deem just and proper.

## **JURY DEMAND**

**Plaintiff demands a trial by struck jury on all issues so triable.**

Respectfully submitted, this **10**th day of January, 2025.

Respectfully submitted,

s/Roderick T. Cooks
Roderick T. Cooks
Robert L. Beeman, II
*Attorneys for the Plaintiffs*

**OF COUNSEL:**
Roderick T. Cooks
Winston Cooks, LLC
420 20th Street North
Suite 2200
Birmingham, AL 35203
Tel:   205-482-5174
Fax:   205-278-5876
Email:       lwinston@winstoncooks.com
Email:       rcooks@winstoncooks.com

Robert L. Beeman, II
BEEMAN LAW FIRM
P.O Box 253
Helena, Alabama 35080
205.422.9015 (P)
800.693.5150 (F)
rlbsportsmgnt12@gmail.com

**PLAINTIFFS' ADDRESS:**
Winston Cooks, LLC
420 20th Street North
Suite 2200
Birmingham, AL 35203
Tel:   205-482-5174
Fax:   205-278-5876
Email:       lwinston@winstoncooks.com
Email:       rcooks@winstoncooks.com

**DEFENDANT'S ADDRESS:**
Heart of Alabama Food Bank
c/o Mr. Robert L. Martin
531 Trade Center Street
Montgomery, AL 36108